UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DYLAN DONALD TALLMAN,

                Plaintiff,

   v.                                     Case No. 22-cv-1011-pp

BONNIE GUGLAR, RENEE SCHULLER,
CAPTAIN HARTZHEIM and SEG. SGT. 2ND SHIFT,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Dylan Donald Tallman, who is incarcerated at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his serious medical need. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On September 16, 2022, the court ordered the plaintiff to pay an initial partial filing fee of $9.00. Dkt. No. 6. The court received that fee on September 27, 2022. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

"accepted as true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the
plaintiff pleads factual content that allows a court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." Id. (citing
Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege
that someone deprived him of a right secured by the Constitution or the laws of
the United States, and that whoever deprived him of this right was acting
under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793,
798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d
824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by
plaintiffs who are representing themselves and holds such complaints to a less
stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720
(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The complaint names as defendants Bonnie Guglar, Renee Schuller,
Captain Hartzheim and an unnamed segregation sergeant who was working
second shift on July 28, 2019; the plaintiff says these individuals worked for
Dodge Correctional Institution. Dkt. No. 1 at 3. The plaintiff alleges that on
July 28, 2019, he "was strapped to a bed, it was [his] 6th day in restraints,
[after he] bit through [his] face at the start of 2nd shift app[r]ox 2:00pm." Id. He
says he "was squirting blood and bleeding everywhere." Id. The plaintiff alleges

that nurses checked on him and that Guglar told him that his wound "would coagulate;' he says he was "left to bleed." Id. The plaintiff says he "could not hold [his] wound because [he] was in restraints." Id.

At around 4:00 pm., Guglar administered medication. Id. at 3–4. The plaintiff says he still was bleeding at the time, and Guglar "just dumped [his] medication in [his] bloody mouth." Id. at 4. He alleges "[t]here was so much blood that CO's were mopping up the blood prior to entry into cell #26 [he] was strapped down in bleeding." Id. The plaintiff alleges that at around 8:00 p.m., Guglar came back to his cell with the unknown sergeant and Captain Hartzheim (whose name was Webster at the time). Id. He alleges that Guglar attempted to take the plaintiff's blood pressure "about 18 times" before calling Schuller, who is Guglar's supervisor. Id. The plaintiff says that a "manual B.P. was done," and that Guglar then "wave[d] 'Byeee,' like it was funny and walked out not pronouncing the reading." Id. The plaintiff asserts that Captain Hartzheim and the unnamed sergeant allegedly "disregarded the fact [the plaintiff] was covered in blood and urine their entire shift and did not change [his] shorts or mattress." Id.

The plaintiff says that at around 11:00 p.m., Sergeant Degraw (who is not a defendant) was standing at the plaintiff's cell window when he requested medical attention because he "felt as if [he] was dying." Id. Degraw called the third-shift infirmary nurse; the plaintiff says his blood pressure was "60 over 40," so an "ambulance was called high and hot." Id. He says the EMTs who responded "were yelling at staff for leaving [him] like that," but that "they"—

4

presumably the medical staff—"pointed fingures [sic] at 2nd shift." Id. at 4–5. The plaintiff says he ended up being admitted at Waupun Memorial Hospital, "undergoing a blood transfusion and received stitches." Id. at 5.

The plaintiff asserts that Guglar and Schuller were deliberately indifferent to his serious medical needs on July 28, 2019, which almost caused his death. Id. He also asserts that they were "negligent and cruel and unusual" to him by denying him medical care. Id. He asserts Captain Hartzheim was deliberately indifferent to him "by facilitating [his] unconstitutional conditions of confinement allowing [him] to fester in [his] own blood and urine for her entire 8-hour shift" and ignoring his "on the surface condition." Id. The plaintiff also asserts he was subject to excessive force because he was strapped down for six consecutive days in urine and blood, nearly naked, and that no one changed his shorts in almost a week. Id. He says the chest strap was so tight that his breathing was constricted. Id. The plaintiff also asserts the unknown sergeant was deliberately indifferent to his condition. Id. Finally, he seeks to "add malpractice on the Nurses Guglar and Schuller." Id. The plaintiff seeks unspecified punitive damages and "monetary money." Id. at 6.

On September 29, 2022, the court received from the plaintiff a filing titled "Supplemental 1983 Information." Dkt. No. 8. The plaintiff says he was a pretrial detainee at the time of the alleged events. Id. He says his claims should proceed under the Fourteenth Amendment. Id.

C.    Analysis

If the plaintiff was a pretrial detainee during the events alleged in his complaint, the court reviews his allegations of inadequate medical treatment under the Fourteenth Amendment.[1] Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018). Under the Fourteenth Amendment, the plaintiff must show only that the medical care provided was objectively unreasonable; he is not required to show that any defendant was subjectively aware that the medical treatment was unreasonable. Id. (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)).

The complaint alleges that the plaintiff bit through his cheek while he was in segregation at Dodge. He says he was bleeding profusely, to the point that staff had to mop up the blood accumulating on the floor. He says he was strapped down, so that he could not tend to his own wound. He alleges that Guglar and Schuller did not provide him any treatment or try to stop the bleeding; he says Guglar instead told him his wound "would coagulate." Dkt. No. 1 at 3. The plaintiff asserts that he was "left to bleed," although he does not say by whom. Id. He says that Guglar provided him medication at one point,

_____

[1] The Wisconsin Department of Corrections indicates that the "primary" purpose of Dodge Correctional Institution "is to serve as the central reception center for all adult male inmates sentenced to prison." https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/DodgeCorrectionalInstitution.aspx. This implies that the plaintiff may have been a convicted and sentenced person at the time of the events in the complaint, which would mean that his claims should be analyzed under the Eighth, not the Fourteenth, Amendment. Miranda, 900 F.3d at 350. But at the screening stage, the court accepts as true the plaintiff's factual allegations, so the court has analyzed the plaintiff's claims as if he were a pretrial detainee.

but that she simply dumped it into his bloody mouth. The plaintiff alleges that Schuller later arrived to see him, but that she did not treat him. He says that Guglar and Schuller took his blood pressure, which the plaintiff says fell as low as 60/40. He says EMTs eventually came to transport him to a hospital, where he received a blood transfusion and stitches to close his wound. If these allegations are true—and the court must accept that they are for purposes of screening—the medical care Guglar and Schuller provided the plaintiff (or that they did not provide him) was unreasonable. A reasonable medical professional would now allow a strapped-down prisoner to bleed profusely without attempting to control the bleeding or providing any treatment. The court will allow the plaintiff to proceed on this claim against Guglar and Schuller.

The plaintiff also seeks to proceed on a claim of medical malpractice against Guglar and Schuller for their allegedly inadequate medical treatment. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Medical malpractice does not violate the Constitution. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But a plaintiff may bring a claim of medical malpractice under Wisconsin state law. Because the facts underlying the plaintiff's claim of medical malpractice are the same as those underlying his Fourteenth Amendment claim, the court will exercise

supplemental jurisdiction over the plaintiff's state-law medical malpractice claim.

The court also analyzes the plaintiff's allegations against Captain Hartzheim and the unknown sergeant under the Fourteenth Amendment. See Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (citing Kingsley, 576 U.S. at 397). Under the Fourteenth Amendment, the plaintiff must show "that a defendant's conduct was 'objectively unreasonable.'" Kemp v. Fulton County, 27 F.4th 491, 495 (7th Cir. 2022) (quoting Hardeman, 933 F.3d at 824). He must show that the defendants' actions were not "'rationally related to a legitimate non-punitive governmental purpose'" or that they were "'excessive in relation to that purpose.'" Hardeman, 933 F.3d at 822 (quoting Kingsley, 576 U.S. at 398). To do so, the plaintiff must allege that the defendants acted "with purposeful, knowing, or reckless disregard of the consequences" of their actions. Miranda, 900 F.3d at 354. The court must "focus on the totality of facts and circumstances" that the defendants faced and "gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." Williams v. Ortiz, 937 F.3d 936, 942 (7th Cir. 2019); see Kingsley, 576 U.S. at 397.

The plaintiff alleges that Captain Hartzheim and the unknown sergeant came to his cell by 8:00 p.m. and were present while he was bleeding and receiving inadequate medical treatment. He says the officers saw that he was covered in his own blood and urine but did not provide him a change of clothes, change his mattress or remove his restraints. The officers may have

8

had a legitimate, non-punitive reason to keep the plaintiff restrained to his mattress. But the complaint does not reveal such a reason, nor does it provide reason to believe that it would be reasonable for the officers not to change the plaintiff's clothes or bedding after six days of being strapped down. The court finds that the complaint sufficiently alleges that the officers' actions were not "rationally related to a legitimate non-punitive governmental purpose" or were "excessive in relation to that purpose." Hardeman, 933 F.3d at 822. The court will allow the plaintiff to proceed on a Fourteenth Amendment claim of deliberate indifference against Captain Hartzheim and the unknown sergeant.

The plaintiff seeks to proceed on a claim of excessive force because he was tightly strapped down for six days. But he does not say who strapped him down or identify who he is suing for strapping him down. He does not allege that Captain Hartzheim or the unknown sergeant are responsible. He says only that those defendants were present on the sixth day that he was strapped down. The plaintiff may wish to amend his complaint to add details about who strapped him down and who was responsible for keeping him strapped down for so long. But based on the sparse details alleged in the complaint, the court will not allow him to proceed against any named defendant on a claim of excessive force.

It is possible that the plaintiff did not timely file this lawsuit. The statute of limitations for lawsuits brought under §1983 is "the statute of limitations for personal injuries supplied by the state in which the claim arose." Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing Wallace v. Kato, 549 U.S.

9

384, 387 (2007)). The limitation period for §1983 claims arising in Wisconsin is the three-year limitation period in Wis. Stat. §893.54 (2018). The three-year limitation period applies to causes of action accruing on or after April 5, 2018. See Huber, 909 F.3d at 207 (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six to three years). The plaintiff alleges that his mistreatment occurred on July 28, 2019. Dkt. No. 1 at 3. That means that he needed to file this lawsuit by July 28, 2022 for it to be timely.

The court received the complaint on September 1, 2022, over a month after the July 28, 2022 three-year deadline. But the complaint is dated July 26, 2022, two days before the limitation deadline elapsed. The plaintiff gets the benefit of the earlier date based on the prison mailbox rule. See Taylor v. Brown, 787 F.3d 851, 859 (7th Cir. 2015) (explaining that under prison mailbox rule, "a pro se prisoner's legal documents are considered filed on the date that they're tendered to prison staff in accordance with reasonable prison policies," which is usually the date the prisoner signed the document). That rule applies equally to incarcerated persons at e-filing institutions who tender their documents to prison staff to upload to the court's server. Id. The plaintiff is at Dodge, which is an e-filing institution. That means there is no envelope showing the date on which the plaintiff provided the complaint to prison staff to upload. At this stage, the court assumes that the plaintiff gave his complaint to prison staff for e-filing on the date he signed it—July 26, 2022. Nothing in this decision precludes the defendants from raising the statute of limitations later if they have evidence to the contrary.

The court will allow the plaintiff to proceed on Fourteenth Amendment claims of deliberate indifference against defendants Bonnie Guglar, Renee Schuller, Captain Hartzheim and the unknown sergeant. He also may proceed on a state-law claim of medical malpractice against Guglar and Schuller. He may not proceed on a Fourteenth Amendment claim of excessive force.

Because the plaintiff does not know the name of the second-shift sergeant, he must use discovery to learn his or her name. Once all named defendants have responded to the complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the sergeant and will provide the plaintiff additional information for how to identify that defendant. **The plaintiff must not start the process for identifying the unknown sergeant until the court has issued the scheduling order.**

## III.  Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Bonnie Guglar, Renee Schuller and Captain Hartzheim at Dodge Correctional Institution. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

11

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$341** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Dodge Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin this 17th day of November, 2022.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**