UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DYLAN DONALD TALLMAN,

                   Plaintiff,

    v.                                        Case No. 22-cv-1011-pp

BONNIE GUGLER, *et al.*,

                   Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 37) AND DISMISSING CASE WITHOUT PREJUDICE**

Plaintiff Dylan Donald Tallman, who is incarcerated at the Marathon County Jail and is representing himself, is proceeding on Fourteenth Amendment claims in this lawsuit under 42 U.S.C. §1983. The defendants have moved for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before bringing this lawsuit. Dkt. No. 37. The plaintiff opposes the motion. The court will grant the motion and dismiss this case without prejudice.

**I.    Facts**

    A.    <u>Procedural Background</u>[1]

The court received the plaintiff's complaint on September 1, 2022. Dkt. No. 1 at 7. The complaint alleges that on July 28, 2019, the defendants were deliberately indifferent to the plaintiff's serious medical needs in violation of the

---

[1] The court provided additional procedural background for this case in its August 10, 2023 order ruling on several pending motions. Dkt. No. 61. The background recounted in this order involves filings relevant to this order only.

Fourteenth Amendment. Id. On November 17, 2022, the court issued a screening order allowing the plaintiff to proceed on those claims and on state law claims of medical malpractice. Dkt. No. 8.

On January 17, 2023, the court issued a scheduling order setting a March 20, 2023 deadline for the defendants to move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 12. But on March 14, 2023, the defendants moved for summary judgment on the ground that the plaintiff had not timely filed his lawsuit. Dkt. No. 14. The defendants also moved to stay all other case deadlines pending the court's decision on that motion. Dkt. No. 18. The plaintiff opposed the defendants' motion for summary judgment. Dkt. No. 22, 23. The March 20, 2023 deadline for the defendants to move for summary judgment on exhaustion grounds passed. On March 30, 2023, the defendants moved to withdraw their motion for summary judgment on timeliness grounds. Dkt. No. 30.

On June 7, 2023, before the court had decided any of the above motions, the defendants moved for summary judgment on exhaustion grounds. Dkt. No. 37. The defendants asked that the court accept the motion because their "pending Motion to Extend [*sic*] the applicable deadline has not yet been granted or denied." Dkt. No. 38 at 2. The plaintiff opposed the motion in part because the defendants filed it after the March 20, 2023 deadline. Dkt. No. 47 at 1–2.

On August 10, 2023, the court issued an order that, among other things, granted the defendants' motion to withdraw their motion for summary

judgment on timeliness grounds and denied as moot the defendants' motion to stay (not extend) the deadlines. Dkt. No. 61. The court explained that although the March 20, 2023 deadline for the defendants to move for summary judgment on exhaustion grounds had passed, "the court had not yet ruled on the defendants' motion to stay their deadline to file that motion when the deadline elapsed." Id. at 10 (citing Dkt. No. 18). The court ruled that it would "consider the defendants' motion for summary judgment on exhaustion grounds to be timely filed" and would address that motion in a separate order. Id. This order decides that motion.

B.     Factual Background

At the time of the events described in the lawsuit, the plaintiff was incarcerated at Dodge Correctional Institution. Dkt. No. 39 at ¶1. The plaintiff alleges that on July 28, 2019, Nurse Bonnie Gugler failed to provide him proper medical treatment for a wound he had bitten into his cheek. Dkt. No. 8 at 6 (citing Dkt. No. 1 at 3). He alleges that Gugler instead told him that his wound "would coagulate" and that he was left to bleed (though he does not say by whom). Id. He says that Gugler provided him medication by dumping it into his "bloody mouth." Id. at 4. The plaintiff alleges that Gugler's supervisor, Renee Schueler, failed to intervene and provide proper medical treatment. Id. at 4. He alleges that Captain Lana Hartzheim and Sergeant Michael Seavers saw the plaintiff covered in his blood and waste but failed to provide him a change of clothes or remove his restraints. Id. at 8. The court allowed the plaintiff to

3

proceed on Fourteenth Amendment claims against Gugler, Schueler, Hartzheim and Seavers (whom the complaint named as a John Doe). Id. at 6–9.

On August 1, 2019, the institutional complaint examiner's office at Dodge Correctional Institution received a complaint from the plaintiff that he had signed on July 30, 2019. Dkt. No. 39 at ¶14; Dkt. No. 40-2 at 2. The complaint alleged that on July 28, 2019, a nurse "allowed [the plaintiff] to bleed out the entire shift." Dkt. No. 40-2 at 2. The complaint elaborated that the plaintiff bit a hole in his face while he was strapped down for seven days. Id. The complaint alleged that each nurse who checked on him "said they could do nothing." Id. It alleged that one such nurse sarcastically said "Bye" as she was leaving his cell. Id. (The plaintiff alleges the same against Gugler in this §1983 complaint. Dkt. No. 1 at 4.) The complaint alleged that other nurses could not get his blood pressure, so "Schuller [sic] came down" and manually took his blood pressure but provided no further treatment. Dkt. No. 40-2 at 2. The complaint alleged that the plaintiff "felt like [he] was dying." Id. It stated that a third-shift nurse came in later, took the plaintiff's blood pressure and called for an ambulance. Id. The plaintiff was taken to a hospital for a blood transfusion and surgery. Id. The complaint noted that the plaintiff "wrote the warden because Captains present and did nothing because nurse overrides." Id.

The same day, August 1, 2019, institutional complaint examiner J. Bovee (who is not a defendant) returned the complaint to the plaintiff with a letter requesting "proof of [his] attempt to resolve the issue as claimed in the

complaint submission." Dkt. No. 40-2 at 1. The letter says that if the plaintiff did not have proof that he "attempted to resolve this issue, [he] must contact K. Johnson, HSU Manager." Id. The letter notes that that plaintiff had "one opportunity to correct and resubmit this returned complaint as allowed under DOC 310.10(5)." Id. It advised the plaintiff that if he "fail[ed] to follow the instructions from this letter[,] the complaint may not be processed or returned to [him]." Id. The defendants assert that the letter recommends that the plaintiff contact Captain Rymarkiewicz, dkt. no. 39 at ¶4, but Bovee's letter does not mention Rymarkiewicz.

Institutional Complaint Examiner Brian Kirst (who is not a defendant) filed a declaration in which he avers that the plaintiff's record of grievances and appeals shows that he did not resubmit his complaint, as Bovee's letter instructed. Dkt. No. 40 at ¶17. Kirst says he found no other complaints that the plaintiff had filed related to the claims in this lawsuit. Id. at ¶18.

The plaintiff asserts that he obtained some information that he needed and submitted a complaint on August 31, 2020. Dkt. No. 50 at ¶11. He says that he explained that he was grieving the July 28, 2019 incident but that he'd first needed names and now that he had them, he was filing the grievance. Id. He says the complaint "was accepted," and he attached a copy of the August 31, 2020 complaint. Id.; Dkt. No. 50-1 at 1.

The defendants filed a more legible copy of this 2020 complaint. Dkt. No. 54-1 at 10. The complaint has a stamp showing that the institutional complaint examiner's office received it on September 1, 2020. Id. It lists the

"date of incident" as August 31, 2020 and the "time of incident" as 4:00 p.m.
Id. In the section that asked the plaintiff to "[b]riefly state who or what is the
**ONE** issue, of this complaint" and to describe the remedial action he was
requesting, the plaintiff wrote:

> I could never link who was the 2nd shift captain in charge and it's
> about me being strapped down a week on 7-28-2019, this supervisor
> let the 2nd shift nurses allow me to bleed out 2:00 pm to 10:00 pm
> and I cannot obtain "confidential documents" The capt. allowed this.

Id.

In the section of the complaint where the plaintiff was asked to identify

the person with whom he attempted to resolve the one issue, and to describe

the result of that attempt, the plaintiff wrote:

> I submitted request(s) to records, received a denial saying records
> are confidential, I found out Webster, changed her name to Lara
> Bentley [sp?], and how may I identify this person if its confidential,
> plus she or whoever capt. in charge allowed them nurses on 7-28-
> 19 to let me bleed out, & I cannot obtain anything it's confidential.
> I need yar (sic) investigation, records refuses to comply. Thank you.

Id.

Finally, in the section asking the plaintiff to provide the details

surrounding the complaint, the plaintiff wrote:

> I put in request(s) to record who never respond to this, finally I got
> somewhere after all this time but a road block because these files
> are confidential? It was my life and I almost died and the conditions
> of my [illegible] now my due process is hindered . . . Do a report find
> out the head captain was on 7-28-19 only 2nd shift and whats in
> them 3-2nd shift IR's marked confidential or I'll get a court order,
> Identify the 2nd shift supervisor that allowed 2nd shift nurses 7-28-
> 19, 2:00 pm to 10:00 pm only where I needed a blood transfusion,
> Records is as always being very uncooperative in this matter and my
> grievance is . . . 2nd shift supervisor, was negligent and had a duty
> and allowed 2nd shift nurses 7-28-19, to leave me for dead, I can't
> obtain what this is but she/he exists & it cant be confidential to me.

Id.

The complaint ends by noting, "I was my life on the line." Id.

With their reply brief, the defendants filed a supplemental declaration from Corrections Complaint Examiner Bradley Hompe (not a defendant). Dkt. No. 54. Hompe averred that the complaint received on September 1, 2020 "was interpreted to be regarding records requests" and "was not about the events underlying the July 28, 2019 incident wherein [the plaintiff] was allegedly strapped down and bleeding." Id. at ¶¶9–10. Attached to Hompe's declaration is the full institutional complaint report for the complaint received September 1, 2020. Dkt. No. 54-1. The ICE receipt indicates that someone summarized the complaint received on September 1, 2020 as complaining that "[the plaintiff] is unable to receive the records he requests." Id. at 1. On September 8, 2020, J. Bovee (who had reviewed the plaintiff's August 1, 2019 complaint) recommended dismissing the September 1, 2020 complaint because "records office staff denied the inmate's Disbursement Request indicated Incident Reports are confidential." Id. He noted that the plaintiff "can have an attorney file and [sic] Open Requests request [sic] to K. Parenteau, Records Office Supervisor, to determine whether or not they can be provided." Id. On September 22, 2020, Dodge Warden Jason Benzel accepted Bovee's recommendation and dismissed the plaintiff's complaint. Id. at 3. The defendants attached a copy of the Disbursement Request mentioned in Bovee's report, in which the plaintiff sought incident reports (IRs) from July 28, 2019. Id. at 12.

7

On September 28, 2020, the corrections complaint examiner's office received the plaintiff's appeal from his dismissed complaint. Id. at 13. The appeal asserted that his complaint was about "the 'merits' of what occurred" on July 28, 2019. Id. He asserted that Bovee "misinterpreted [his] complaint basis." Id. at 15. But he also stated, "I do not care if it's confidential all this time, it happened to me and you must acknowledge and affirm my complaint appeal." Id. Hompe reviewed the plaintiff's appeal the next day—September 29, 2020—and noted, "It is not necessary to have an attorney make the records request. Any person, whether represented or not, can make a records request." Id. at 5. Hompe recommended affirming the plaintiff's complaint in part, "noting that the institution should process the records request from this inmate." Id. On September 30, 2020, the Office of the Secretary accepted Hompe's recommendation and affirmed the plaintiff's appeal in part, noting that his "request for records should be processed." Id. at 6.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if he or she shows that there is no genuine dispute as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than allegations to defeat a motion for summary judgment; he instead must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). The court must construe all facts in the light most favorable to the plaintiff, as the non-moving party, and draw all reasonable inferences in his favor. See Anderson, 477 U.S. at 255.

B.     Exhaustion

Under the Prison Litigation Reform Act (PLRA), an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The plaintiff asserts that on

9

July 28, 2019, he was a detainee and not a convicted person, but the PLRA and its exhaustion requirement apply to "prisoners" as the statute defines that term, and includes detainees. See 28 U.S.C. §1915(h) (defining "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program").

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93), overruled on other grounds by Henry v. Hulett, 969 F.3d 769, 774 (7th Cir. 2020). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss his claims. See Perez, 182 F.3d at 535. "Substantial compliance with administrative remedies" does not satisfy the PLRA. Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001), and Dole, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System (ICRS) to allow incarcerated persons to file complaints about policies, rules, living

conditions and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee or agent of the DOC. Id. §310.05. Before filing a formal complaint, an incarcerated person must first attempt to resolve the issue informally within his institution. Id. §310.07(1). If the issue is not resolved, the incarcerated person then must file a complaint with the institutional complaint examiner within fourteen calendar days of the incident. Id. §310.07(2). Each complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Id. §310.07(5)–(6).

A complaint examiner must accept, return or reject the complaint. Id. §310.10(2). If the complaint examiner accepts or rejects the complaint, she assigns a file number and classification code to the complaint and provides notice to the incarcerated person that the complaint was received. Id. §310.10(3)–(4). The complaint examiner may return a complaint if it violates §310.07(1) or (3)–(5) and allow the incarcerated person an opportunity to correct and resubmit the returned complaint. Id. §310.10(5). The incarcerated person receives only one opportunity to correct a returned complaint and must resubmit the corrected complaint within ten calendar days. Id. The incarcerated person must appeal any adverse decision within fourteen days of the decision and await a final decision from the Office of the DOC Secretary. Id. §§310.12 & 310.13.

C.    Analysis

The undisputed evidence shows that the plaintiff filed an institutional complaint only two days after his July 28, 2019 alleged mistreatment. An institutional complaint examiner received the complaint on August 1, 2019. The complaint examiner did not accept the complaint, returning it to the plaintiff with a letter advising him to resubmit the complaint with proof that he had attempted to resolve the issue informally before filing it. The letter cited Wis. Admin. Code §DOC 310.07(1), which provides that "[p]rior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint. The ICE [institutional complaint examiner] may request inmates to provide evidence of having followed the specified process." Dkt. No. 40-2 at 1. The plaintiff had "one opportunity to correct and resubmit a returned complaint," id., and he was required to do so within ten calendar days, Wis. Admin. Code §310.10(5). It is undisputed that the plaintiff did not resubmit his complaint within that ten days and that he did he appeal the institutional complaint examiner's decision.

This is not the first time that a court in this district has reviewed the plaintiff's failure to exhaust his administrative remedies for his claims about July 28, 2019. The defendants point out that the plaintiff previously filed a complaint under §1983 raising the same federal and state claims against Gugler and Schueler. Dkt. No. 53 at 1–2; Case No. 19-cv-1820-JPS. The defendants in that case also moved for summary judgment on the ground that

12

the plaintiff failed to exhaust his administrative remedies before bringing his complaint. Id., Dkt. No. 56 at 1. Judge Stadtmueller summarized the now-familiar facts relevant to the defendants' motion:

> On, July 30, 2019, Plaintiff submitted an inmate complaint related to the July 28, 2019 incident. (Docket #23 at 2). His complaint was marked received on August 1, 2019. (*Id.*) On that same date, the ICE returned Plaintiff's inmate complaint because he had not shown that he had attempted to resolve the issue prior to filing the complaint. (Docket #23-2). In an accompanying letter, the ICE explained that Plaintiff's inmate complaint was being returned, and not rejected, so that he would have the opportunity to fix identified errors and resubmit his complaint within ten days. (*Id.*) Specifically, the ICE requested that Plaintiff provide proof of his attempt to resolve the issue before filing the complaint, and if he did not have any proof, Plaintiff was told to contact the HSU manager. (*Id.*) Plaintiff never resubmitted his inmate complaint. (Docket #23 at 2).

Id. at 6–7. Judge Stadtmueller rejected two arguments the plaintiff asserted about why he did not resubmit his complaint, but the plaintiff has not raised those arguments in this case. Id. at 7–8.

> Judge Stadtmueller concluded:

> Based on the undisputed facts, Plaintiff did not exhaust his administrative remedies before filing suit. Plaintiff never submitted an inmate complaint that was accepted by the ICE regarding the July 28, 2019 incident. Plaintiff's initial complaint was returned to Plaintiff so that he could remedy specified errors and resubmit it to the ICE. Plaintiff failed to do so. . . .

> In sum, Plaintiff never submitted an inmate complaint that was accepted by the ICE regarding the July 28, 2019 incident. Thus, Plaintiff has failed to exhaust his administrative remedies. Therefore, the Court will grant Defendants' motion for summary judgment for failure to exhaust and dismiss this case without prejudice.

Id. at 9. Judge Stadtmueller added in a footnote, "Although it seems clear that Plaintiff will not be able to complete the ICRS process for his claims at this late

13

date, dismissals for failure to exhaust are always without prejudice." Id. at 9, n.5 (citing Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004)).

On March 11, 2021, about a week after Judge Stadtmueller entered judgment dismissing the case without prejudice, the plaintiff moved for reconsideration. Id., Dkt. No. 58. The plaintiff pointed to the complaint received September 1, 2020 complaint, which the plaintiff asserted had "fully exhausted" his administrative remedies. Id. at 2. Judge Stadtmueller denied the plaintiff's motion. Id., Dkt. No. 61 at 2–3. He explained that, even if the complaint received September 1, 2020 had exhausted the plaintiff's administrative remedies for his claim about what occurred on July 28, 2019, he had filed that complaint *after* filing his federal lawsuit, and under the PLRA incarcerated persons must "exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable." Id. (quoting Chambers v. Sood, 956 F.3d 979, 984 (7th Cir. 2020)).

The court agrees with Judge Stadtmueller's analysis regarding the plaintiff's August 1, 2019 complaint. The plaintiff filed only one timely complaint about the July 28, 2019 incident, but the complaint examiner's office returned that complaint with instructions for the plaintiff to correct and resubmit it. The plaintiff did not follow those instructions and did not timely correct and resubmit the returned complaint. That means he did not exhaust his administrative remedies. But because Judge Stadtmueller dismissed the plaintiff's previous case without prejudice, the plaintiff was not prohibited from

filing another lawsuit about the July 28, 2019 incident, assuming he could show that he since had exhausted his administrative remedies.

The plaintiff asserts exactly that—that he since has exhausted his administrative remedies—and he asserts that this court should not dismiss his complaint for failure to exhaust. The plaintiff asserts that he was on clinical observation and a sharps restriction, which "hindered" him from writing a complaint, so a sergeant did it for him. Dkt. No. 47 at 2. He concedes that this complaint was returned "and stated plaintiff needed to resolve the complaint and first contact HSU Manager K. Johnson." Id. He says he remained on a sharps restriction, had the same sergeant resubmit the complaint and that it wasn't accepted. Id. The plaintiff asserts that after "learning names and facts," he filed the complaint "again on 8-31-2020," explaining that until then he had not been able to learn who had been working second shift on July 28, 2019 because the records were deemed confidential. Id. at 2-3. He argues that the August 31, 2020 complaint asserted "the allegations of plaintiff being strapped to a bed and being allowed to bleed the entire shift without proper care and resulting in a blood transfusion at the start of third shift." Id. at 3. He insists that unlike the situation before Judge Stadtmueller, this time he exhausted his allegations in this lawsuit and then sued. Id. He maintains that he needed records of who was present. Id.

There are problems with the plaintiff's reliance on the complaint received on September 1, 2020. It is undisputed that the institutional complaint examiner who reviewed the complaint interpreted it as raising a claim about

the plaintiff's denied records request. The complaint examiner said nothing about the "merits" of the plaintiff's claim regarding July 28, 2019. The complaint examiner dismissed the complaint about the records request, and the warden approved that recommendation. A corrections complaint examiner reviewed the plaintiff's appeal of his dismissed complaint and concluded that it involved only his claim about a denied records request. But the corrections complaint examiner agreed that the request had been improperly denied. He affirmed the plaintiff's appeal in part with a recommendation that the plaintiff's records request be fulfilled. The Office of the Secretary accepted that recommendation.

This history of the complaint received on September 1, 2020 shows that the institutional complaint office universally construed the complaint and appeal as relating only to the plaintiff's *request for records* about who was present during the July 28, 2019 incident. No one interpreted the complaint or appeal to be about *his treatment* on July 28, 2019. Above, the court quoted the plaintiff's complaint. That language contained only a passing reference to the plaintiff's mistreatment on July 28, 2019. It focused almost exclusively on the plaintiff's request for information about who was involved that day, including several references to the records office denying his requests for information because the requests sought confidential or classified information. The plaintiff specifically demanded that he be given the records and threatened that if he did not get them, he would seek a court order.

As explained above, an incarcerated person may raise "only one clearly identified issue" per institutional complaint. Wis. Admin Code §DOC 310.07(5). Every official in the complaint examiner's office who reviewed the complaint received on September 1, 2020, or the appeal from its denial, interpreted it to be raising only one issue—his denied records requests. If an official had interpreted the complaint as raising more than one issue (in other words, as complaining that the plaintiff was denied records *and* complaining about his treatment on July 28, 2019), that official likely would have returned or rejected it for violating §310.07(5). The complaint examiner's office instead accepted the complaint because ICE staff interpreted it as raising only the issue of the plaintiff being denied records. That is not the same issue that the plaintiff raises in his §1983 lawsuit, so the complaint received on September 1, 2020 did not exhaust his administrative remedies for the claim he raised in this lawsuit.

The plaintiff asserts that the complaint received on September 1, 2020 was mischaracterized as raising only a records issue. He says that the complaint also raised "the merits" of his treatment on July 28, 2019. Dkt. No. 54-1 at 13. The plaintiff says he "elaborate[d]" on the issues relating to his treatment in his appeal from the dismissal of the complaint received on September 1, 2020. Dkt. No. 50 at ¶12. But even if the plaintiff is correct, it is undisputed that he did not sign and file his second complaint until August 31, 2020, and the complaint examiner's office did not receive it until September 1, 2020—over a year after the alleged incident and far beyond both the initial

fourteen-day deadline after the incident to file the complaint and the ten-day deadline the plaintiff was given to resubmit his returned complaint. An untimely complaint does not exhaust the incarcerated person's administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo, 286 F.3d at 1025).

The plaintiff could have requested that the complaint examiner consider the "merits" of his July 28, 2019 claim and argued that he had "good cause" for his late complaint. Wis. Admin. Code §DOC 310.10(2). An institutional complaint examiner has discretion to accept a late complaint for good cause. Id. §310.07(2). But the plaintiff has not argued that he tried to establish good cause to excuse his late filing, and there is no evidence that he requested to do so.[2] The complaint received on September 1, 2020 did not exhaust the plaintiff's administrative remedies for his claim about the July 28, 2019 incident because it did not clearly address that issue, and even if it had, it was untimely.

The plaintiff also says that his "route to exhausting administrative remedies was hard because [he] needed names of everybody and documents." Dkt. No. 50 at ¶10. He stops short of asserting that the grievance process was unavailable to him. Even if he had, that argument would be a stretch because

---

[2] The plaintiff argues that he needed to get the names of the second shift workers before filing a second complaint, and that he couldn't get those names because his requests were denied based on confidentiality. But he has not argued that he asked *the complaint examiner* to consider the merits of the claim, or that he told *the complaint examiner* that he had good cause for failing to timely file a complaint about what happened on July 28, 2019.

his Complaint History Report shows that between July 2019 and September 2020, he filed (and the complaint examiner's office accepted) eleven complaints about various issues. Dkt. No. 40-1 at 3. There also is no requirement under §DOC 310 that the plaintiff name all the officials he believes were involved on July 28, 2019; he needed only to include "sufficient information for the department to investigate and decide the complaint." Wis. Admin. Code §DOC 310.07(6); see Bergen v. Wisconsin, No. 20-cv-813-JPS, 2022 WL 3369540, at *6 (E.D. Wis. Aug. 16, 2022) (citing Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)) (noting that "inmate complaints need not articulate legal theories or specifically name every individual defendant").

The defendants have satisfied their burden to show that the plaintiff failed to exhaust his administrative remedies before bringing this federal lawsuit. The undisputed evidence shows that the plaintiff did not timely correct and resubmit his returned complaint about his alleged mistreatment on July 28, 2019. The only other complaint that discussed July 28, 2019 was filed over a year later—well beyond the plaintiff's fourteen-day deadline to file a grievance and his ten-day deadline to resubmit his complaint—and that complaint raised a different issue (although it was an issue related to the July 28, 2019 incident). Because the plaintiff did not timely file an accepted complaint about the events of July 28, 2019, he failed to exhaust his administrative remedies for that claim. As Judge Stadtmueller did in the plaintiff's previous case, this court must dismiss this case without prejudice. See Ford, 362 F.3d at 401. Because the court is dismissing all federal claims for failure to exhaust, the

court will relinquish its supplemental jurisdiction over the plaintiff's state-law medical malpractice claims. See 28 U.S.C. §1367(c)(3).

## III. Conclusion

The court **GRANTS** the defendants' motion for summary judgment on exhaustion grounds. Dkt. No. 37.

The court **DISMISSES** this case without prejudice. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 11th day of September, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**